UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Darian Antonio Coleman, | ) | C/A No. 0:24-cv-05465-DCN-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Patrol Sgt. Crowley, Officer Benjamin | ) | |
| J Nydes, Officer Quentin Eley, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this action alleging various constitutional violations pursuant to 42 U.S.C. § 1983. ECF No. 1. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases filed under § 1983 and submit findings and recommendations to the district court. Before the Court are Plaintiff's Motions for Summary Judgment (ECF Nos. 53; 65; 71; 98), Plaintiff's Motions to Challenge the Validity of the Arrest Warrant (ECF No. 93), to Suppress Evidence and Argument for Lack of Probable Cause (ECF No. 95), to Suppress Arrest Warrant and Derivative Evidence (ECF No. 110), to Challenge the Legality of the Traffic Stop (ECF No. 119), to Suppress Evidence and Arrest Warrant (ECF No. 123), to Revoke Surety Bonds (ECF No. 146), to Suppress Evidence due to Inconsistencies in the Allege Victim's Statements (ECF No. 148), and to Suppress Evidence due to Inconsistencies in the Alleged Victim's Statements (ECF No. 158) and Defendants' Motion for Summary Judgment (ECF No. 150).

1

## BACKGROUND

On August 5, 2024, Patrol Sgt. Crowley ("Crowley") with the Chester County Sheriff's Office initiated a traffic stop of a vehicle for a window tint violation in Chester, South Carolina (the "Traffic Stop"). ECF No. 150-7 at 1:10-45. The Traffic Stop was recorded by Crowley's body worn camera ("BWC") and patrol vehicle dash camera. *Id.* (Dash Camera); 150-9 (Crowley BWC). Crowley approached the vehicle, identified herself, and explained the basis of the stop was for a window tint violation and defective tail light. ECF Nos. 150-9 at 00:00-25; 150-7 at 01:40-55. Plaintiff was the driver, and there was an unidentified passenger. ECF Nos. 150-9 at 00:00-25. Crowley asked Plaintiff for his license or bill of sale, registration, and proof of insurance. *Id.* at 00:25-35. Plaintiff gave Crowley a learner's permit and bill of sale. *Id.* at 00:45-1:12.

Crowley returned to her patrol vehicle and radioed dispatch with Plaintiff's information. ECF Nos. 150-7 at 2:37-3:15; 150-9 at 01:18-32. Within a couple minutes, dispatch informed Crowley that Plaintiff had an outstanding arrest warrant for malicious injury to personal property (the "MIPP warrant"). ECF No. 150-9 at 04:00-04:57. Crowley arrested Plaintiff with the help of an unidentified officer. *Id.* at 05:00-07:30. At this point, Crowley informed Plaintiff of the MIPP warrant, but offered no other details regarding the circumstances of the MIPP warrant. *Id.*

Crowley permitted Plaintiff to call his brother to pick up his vehicle. ECF Nos. 150-9 at 05:00-07:30; 150-8 ¶ 12. When arresting Plaintiff, Crowley told the other officer that she smelled weed, and the other officer concurred, stating that "it is coming off [Plaintiff's] breath." ECF No. 150-9 at 07:30-41. Crowley then removed the passenger from the vehicle and spoke to him. *Id.* at 07:41-08:50. The passenger admitted that marijuana was in the vehicle and that "they" had just smoked. *Id.* at 08:50-09:03. A search of the passenger's pockets revealed marijuana. *Id.* at 09:03-

40, 14:18-30.  Crowley proceeded to search Plaintiff's vehicle but did not find any marijuana.  *Id.* at 10:30-12:00.

Plaintiff's brother then arrived on scene.  ECF No. 150-9 at 09:40-10:16.  Shortly after, a white sedan arrived.  *Id.* at 13:40-45.  While sitting the rear of the patrol vehicle, Plaintiff told his brother and the occupants of the white sedan that it "got to be Keaira.  It got to be Keaira lyin' on me man."  *Id.* at 13:55-14:05; *see* ECF No. 150-7 at 15:30-40.  At one point, Plaintiff told them to "go on down to Keaira's house."  ECF No. 150-9 at 15:35-46.  Crowley transported Plaintiff to the Chester County Detention Center, where Plaintiff was booked on the MIPP warrant.  ECF Nos. 150-7 at 17:46-23:21; 20 at 7, 12.

The MIPP warrant arose from an October 26, 2023, report made by Keaira Young ("Young").  Young reported to Officer Benjamin J. Nydes ("Nydes") that Plaintiff destroyed her vehicle's windshield while a young child was inside.  ECF No. 150-2 at 1-6; *see* ECF No. 150-3 (Nydes BWC).  Young stated she did not know what Plaintiff used to break the windshield.  ECF No. 150-3 at 00:35-45, 12:30-41.  Nydes proceeded to photograph the vehicle, including the damaged windshield.  *Id.* at 00:00-02:50; ECF No. 150-4.  While Nydes was present, Young received a phone call from Plaintiff but hung up on him.  ECF No. 150-3 at 02:40-04:07.  Nydes directed Young to call Plaintiff back and ask why he broke her windshield because if Plaintiff admitted to breaking the windshield, Nydes could "take out a warrant for sure."  *Id.* at 04:07-22.  When asked, Plaintiff denied knowledge about the windshield and indicated he thought Young was recording him.  *Id.* at 04:22-05:45.  Nydes collected some additional information from Young and left the scene.  *Id*. at 5:45-13:42.  At some time after this incident, Nydes left the City of Chester Police Department and moved out of state.  ECF No. 150-8 ¶ 17.

On October 26, 2023, the same day that Young made the report to Nydes, Officer Quentin Eley ("Eley") presented the MIPP Warrant before Chester County Magistrate Judge Olivia Darby Williford ("Judge Williford"). ECF No. 150-5. Eley attested to the following in support of the warrant application:

> On 10/26/2023 at approx. 1945 hrs, while at Parkway Drive and Old York Rd in Chester County, SC, Mr Darian Coleman violated SCCL 16-11-0510(A) Malicious Injury to personal property value less than $2000. Coleman threw an unidentified object at the victim's 2002 Honda Accord causing the windshield to break. Upon investigation Coleman did purposely and maliciously damage or destroy the victim's front windshield. Probable cause is based on but not limited to investigation by law enforcement, direct observation, victim statement and A/V recordings.

*Id.* On October 27, 2023, Judge Williford found probable cause and authorized the arrest of Plaintiff. *Id.*

On August 6, 2024, the day after the Traffic Stop, Plaintiff was released on bond. ECF No. 150-10 at 1. On September 24, 2024, the MIPP warrant was disposed as "Nolle Prosequi" with the reason stating, "Noll Prossed due to officer no longer in law enforcement." *Id.* at 1. Crowley attested that "it is the custom … that when an officer or deputy leaves their law enforcement department and moves out of state, the pending cases where that officer or deputy is the prosecution law enforcement officer are dropped." ECF No. 150-8 ¶ 18. On October 25, 2024, an order for expungement was entered regarding the MIPP warrant. ECF No. 150-10 at 2.

On October 1, 2024, Plaintiff filed his initial Complaint. ECF No. 1. On October 29, 2024, Plaintiff filed an Amended Complaint against Defendants in their individual and official capacities, asserting claims pursuant to § 1983 for malicious prosecution, unreasonable seizure, and unreasonable search in violation of the Fourth Amendment, as well as for due process violations under the Fourteenth Amendment. ECF No. 20.

Plaintiff filed Motions for Summary Judgment on March 18, 2025, March 24, 2025, March 28, 2025, and April 15, 2025. ECF Nos. 53; 65; 71; 98. Defendants filed Responses on April 1, 2025, April 9, 2025, and April 29, 2025. ECF Nos. 81, 89, 128. Defendants filed a Motion for Summary Judgment on May 12, 2025. ECF No. 150. On May 13, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 153. On May 19, 2025, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment. ECF No. 167. Defendants filed a Reply on May 27, 2025. ECF No. 178.

On April 14, 2025, Plaintiff filed a Motion to Challenge the Validity of the Arrest Warrant. ECF No. 93. On April 28, 2025, Defendants filed a Response in Opposition. ECF No. 125. On April 14, 2025, Plaintiff filed a Motion to Suppress Evidence and Argument for Lack of Probable Cause. ECF No. 95. On April 28, 2025, Defendants filed a Response in Opposition. ECF No. 126. On April 22, 2025, Plaintiff filed a Motion to Suppress Arrest Warrant and Derivative Evidence. ECF No. 110. On May 6, 2025, Defendants filed a Response in Opposition. ECF No. 138. On April 23, 2025, Plaintiff filed a Motion to Challenge the Legality of the Traffic Stop and Address Defendants Sgt. Victoria Crowley's Noncompliance with Statutory Requirements. ECF no. 119. On May 7, 2025, Defendants filed a Response in Opposition. ECF No. 142. On April 25, 2025, Plaintiff filed a Motion to Suppress Evidence and Arrest Warrant. ECF No. 123. On May 12, 2025, Defendants filed a Response in Opposition. ECF No. 151. Plaintiff filed a Motion for Motion to Revoke Surety Bonds, which as discussed below the undersigned construes as a Motion for Preliminary Injunction on May 9, 2025. ECF No. 146. On May 23, 2025, Defendants filed a Response in Opposition. ECF No. 174. On May 12, 2025, Plaintiff filed a Motion to

Suppress Evidence due to Inconsistencies in the Alleged Victim's Statements. ECF No. 148. On May 13, 2025, Plaintiff filed a Motion to Suppress Evidence Due to Inconsistencies in the Alleged Victim's Statements. ECF No. 158. On May 27, 2025, Defendants filed a joint Response in Opposition. ECF No. 176. These matters are ripe for review.

**APPLICABLE LAW**

**Standard of Review**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment

motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Liberal Construction of *Pro Se* Pleadings**

While the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see*, *e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Serv.*, 901 F.2d 387, 391 (4th Cir. 1990).

**Section 1983**

Plaintiff's Amended Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## ANALYSIS

**Defendants' Motion for Summary Judgment**

### *Malicious Prosecution Claim Arising from the MIPP Warrant*

Plaintiff brought a claim against Defendants based on the MIPP Warrant. ECF No. 20 at 5, 9-10. Because Plaintiff was arrested pursuant to a facially valid warrant, the Court construes Plaintiff's allegations as a claim for malicious prosecution. *See Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017) ("'Allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued'—e.g., post-indictment or arraignment—are considered a § 1983 malicious prosecution claim.") (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996))*; Wallace v. Kato*, 549 U.S. 384, 390 (2007) (clarifying that "unlawful detention forms part of the damages for ... malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process"); *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) (reiterating its previous holding "that a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. At most, such an official can be pursued through a cause of action for malicious prosecution").

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)). "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* at 646.

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "Probable cause requires more than bare suspicion but ... less than evidence necessary to convict. It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Porterfield*, 156 F.3d at 569 (citations omitted).

Defendants argue Plaintiff's claim should be dismissed because the MIPP warrant was supported by probable cause, recognized by the signing of the warrant by a magistrate. ECF No. 150-1 at 4-11. Plaintiff contends the MIPP warrant lacked probable cause and Nydes knowingly or recklessly included false information or omitted material facts in the supporting affidavit. ECF No. 167 at 3-5, 11-12. Plaintiff also argues Eley should have independently verified the MIPP Warrant before executing it because he knew that it was only supported by uncorroborated victim statements and that Nydes had left employment. *Id.* at 27-29.

At times, Plaintiff suggests the dismissal of the warrant demonstrates a lack of probable cause. ECF No. 167 at 14; *see* ECF No. 110 ("The criminal charge of malicious injury to property was dismissed on September 5, 2024, demonstrating the lack of probable cause and evidentiary foundation for the arrest."). The undisputed record evidence shows the charge was *nolle prossed*. ECF No. 150-10. As attested by Crowley, "it is the custom in this judicial circuit that when an officer or deputy leaves their law enforcement department and moves out of state, the pending cases where that officer or deputy is the prosecuting law enforcement officer are dropped." ECF

No. 150-8 ¶ 18. While favorable to Plaintiff, a *nolle pross* dismissal, under these circumstances, has no effect on the existence of probable cause. *See Brown v. Al Canon Det. Ctr.*, C/A No. 2:19-3194-RMG-BM, 2020 WL 9172827, at *2 (D.S.C. Feb. 26, 2020) ("Under South Carolina law, a 'nolle prosequi' entry indicates that the prosecutor has exercised the discretion not to prosecute a case and is not an adjudication on the merits.") (citing *Mackey v. State of South Carolina*, 595 S.E.2d 241 (S.C. 2004)).

Plaintiff also argues he is entitled to the benefit of the exclusionary rule under the doctrine of the fruit of the poisonous tree. *See e.g.,* ECF Nos. 110; 123. However, these rules are inapplicable to the case at hand. *See e.g.*, *Ware v. James City Cnty., Va.*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) ("This argument fails because 'the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'"), *aff'd sub. nom. by Ware v. James City Cnty., Va.*, 380 F. App'x 274 (4th Cir. 2010); *Vaughn v. Whitfield*, C/A No. 8:12-CV-2405-RMG, 2013 WL 5144751, at *19 (D.S.C. Sept. 12, 2013) ("[E]ven if Defendants' conduct violated Plaintiff's Fourth Amendment right, Defendants are not automatically liable under § 1983 or in tort for their subsequent decisions to place Plaintiff under arrest ... [T]here is no fruit of the poisonous tree doctrine in the § 1983 context that makes Defendants necessarily liable for seizure that came after a potentially unlawful search. The fruit of the poisonous tree doctrine is merely an extension of the exclusionary rule, and as such generally operates 'only in criminal trials.'") (internal citations omitted).

### 1. Crowley

Plaintiff contests the validity of the MIPP warrant as it relates to Nydes and Eley. However, Plaintiff does not forecast evidence, let alone argue, that Crowley violated his constitutional rights

by relying on the MIPP Warrant signed by the magistrate. *See generally* ECF No. 167. Even if Plaintiff is bringing such claim, the claim is subject to dismissal.

"A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *Utah v. Strieff*, 579 U.S. 232, 240 (2016) (quoting *United States v. Leon*, 468 U.S. 897, 920 n.21 (1984)); *see Strieff*, 579 U.S. at 240 ("[The officer's] arrest of [the defendant] was a ministerial act that was independently compelled by the pre-existing warrant."). The undisputed record shows Crowley did not personally act to procure the MIPP Warrant. ECF No. 150-8 ¶ 16 ("Other than the Plaintiff's arrest on August 6, 2024,[1] I had no other involvement in [Plaintiff's] prosecution."). "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *See generally Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). As such, the undersigned recommends that the district court grant Defendants' Motion for Summary Judgment on , any § 1983 claim against Crowley related to the MIPP warrant.

### 2. Nydes

Plaintiff argues Nydes "knowingly presented false and misleading information and omitted material facts in the warrant application." ECF No. 167 at 11 (cleaned up). Plaintiff argues Nydes omitted an alleged contradiction between Young's claim that Plaintiff punched the windshield - despite an absence of physical evidence, like blood, tying Plaintiff to the scene -and Nydes' own conclusion that a hard object, like a rock, struck the windshield twice. ECF No. 167 at 4-5. Plaintiff further argues Nydes lacked probable cause to pursue the MIPP Warrant because Nydes

---

[1] This date appears to be a scrivener's error, as the date of arrest was August 5, 2024. *See e.g.,* ECF No. 150-9 at 00:00.

failed to properly investigate the crime by not obtaining corroborating evidence of Young's report and not questioning Plaintiff about the events. *Id.* at 8. As Plaintiff concludes, because "Nydes relied solely on the victim's statement without conducting any further investigation or corroborating evidence, it is possible he violated the law by failing to establish probable cause as required under the Fourth Amendment." *Id.* at 27.

To demonstrate the absence of probable cause, Plaintiff must show Nydes acted "deliberately or with a reckless disregard for the truth" and made materially false statements or material omissions in the warrant affidavit. *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627-28 (4th Cir. 2007) (citation omitted). A purportedly false statement is "material" to the magistrate's finding of probable cause only when, considering the affidavit without "the offending inaccuracies," the warrant affidavit lacked probable cause. *Id.* at 628 (citation omitted). Accordingly, "[i]f the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." *Id.*

Plaintiff does not point to any false statements in the affidavit that secured the MIPP Warrant. Instead, Plaintiff argues Nydes could have conducted more investigation. Even if true, further investigation under these circumstances is not required by the Fourth Amendment. *See e.g.*, *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000) ("The question before us is not whether [the officer] exhausted every potential avenue of investigation."); *Torchinsky v Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause."). Nydes received a first-hand report from Young that Plaintiff broke her window. ECF Nos. 150-2; 150-3. Nydes documented damage to the vehicle which appeared consistent with Young's report. ECF

No. 150-4. Courts have previously found such evidence sufficient to establish probable cause. *See e.g., Battle v. Jones*, C/A No. 6:15-4960-BHH-KDW, 2016 WL 7800306, at *4 (D.S.C. Dec. 20, 2016) ("[A] finding of probable cause may be based on information provided by a victim or eyewitness to a crime, as it is well-established that when an officer has received ... information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause.") (citing *United States v. Beckham*, 325 F. Supp. 2d 678 (E.D. Va. 2004)); *Torchinsky*, 942 F.2d at 262 ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself.") (citation omitted).

While Plaintiff argues Nydes purposely omitted alleged contradictions in how Young reported her window was broken, Plaintiff mischaracterizes the record. Neither Young nor Nydes concluded how the window was broken. *See* ECF No. 150-3 at 00:35-45, 12:30-41. Instead, as stated in the supporting affidavit to the MIPP warrant, Plaintiff was alleged to have used an "unidentified object" to break the window. ECF No. 150-5.[2] As such, Plaintiff's argument that Nydes omitted a material fact is without merit.

Instead, the record shows that the supporting affidavit to the MIPP warrant established probable cause. Under South Carolina law, it is unlawful to injure another's personal property,

---

[2] In one of Plaintiff's filings, he argues the fact this object is "unidentified" indicates a lack of probable cause because "the alleged object central to the accusation against Plaintiff was not identified with specificity." ECF No. 93 at 1. Yet, S.C. Code Ann. § 16-11-510 states, "It is unlawful for a person to willfully and maliciously … injure or destroy any … any other kind, class, article, or description of personal property, or the goods and chattels of another." By its plain language, the statute does not require the State to prove the specific object or mechanism by which the property was destroyed.

ranging from a misdemeanor to a felony based on the monetary value of the damage. *See generally* S.C. Code Ann. § 16-11-510. The MIPP warrant identified Plaintiff, indicated the date, time, and location of the offense, and alleged that Plaintiff intentionally broke the windshield with an "unidentified object." ECF No. 150-5. The affidavit further supported this finding by referencing the evidence collected to derive this conclusion, including "direct observation, victim statement and A/V recordings." *Id*. Accordingly, the undersigned recommends that the district court grant Defendants' Motion for Summary Judgment on this claim.

### 3. Eley

Plaintiff argues "Eley was aware that the warrant relied solely on an uncorroborated victim's statement and lacked probable cause" and "was aware officer Nydes had left employment." ECF No. 167 at 29. Plaintiff also contends Eley violated his constitutional rights by executing the MIPP warrant "without verifying its validity or probable cause." ECF No. 65 at 3. However, as discussed, Nydes had sufficient probable cause, even if based on Young's statement.

Further, as general matter, the fact that Judge Williford issued the arrest warrant is the "clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). In the context of a warrant obtained by an affidavit, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and [courts] have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984). "Deference to the magistrate, however, is not boundless." *Id*. at 914. "[T]he courts must ... insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police." *Id.* (citations omitted).

As such, "reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915 (quoting *Gates*, 462 U.S. at 239). As discussed previously, the warrant gave Judge Williford a substantial basis for finding probable cause and the undersigned finds Plaintiff has failed to present a genuine issue of material fact this deference should not be given. As such, the undersigned recommends dismissal as to Plaintiff's claim for malicious prosecution against Eley.

### *Fourth Amendment Seizure Claim Arising from the Traffic Stop*

Defendants argue Crowley had reasonable suspicion to initiate the Traffic Stop based upon a window tint violation. ECF No. 150-1 at 7-11. Plaintiff argues the window tint was pretextual, which is evidenced by the fact that Crowley never issued him a citation for his window tint. ECF No. 167 at 7-8.

"The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *Brendlin v. Cal.*, 551 U.S. 249, 255 (2007) (quoting *Del. v. Prouse*, 440 U.S. 648, 653 (1979)). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). A traffic stop violates the Fourth Amendment when there is no "reasonable suspicion that the car is being driven contrary to the laws governing the operation of motor vehicles or that either the car or any of its occupants is subject to seizure or detention in connection with the violation of any other applicable laws." *Prouse*, 440 U.S. at 650.

"Reasonable suspicion" is demonstrated when an officer "point[s] to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *United States v. Branch*,

537 F.3d 328, 336 (4th Cir. 2008). "'[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Ill. v. Wardlow*, 528 U.S. 119, 123 (2000); *see United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct").

Crowley attested in her affidavit that she "used [her] first hand perception and expertise to conclude that the window tinting on the Nissan Maxima I saw had darker window tint than is allowed by law such that I initiated the traffic stop." ECF No. 150-8 ¶ 5. Crowley explained to Plaintiff that a basis for the stop was for a window tint violation. ECF Nos. 150-9 at 00:00-25; 150-7 at 01:40-55.[3] As such, Crowley had reasonable suspicion to initiate the traffic stop.[4] Whether Crowley issued a ticket or citation for the tint is irrelevant, as the operative consideration is the justification which led to the stop, not the actions which took place after the stop occurred. *See Vaughn v. Logan*, C/A No. 8:07-1288-TLW-BHH, 2008 WL 682506, at * 6 (D.S.C. Feb. 5, 2008) (recognizing the reasonableness of police action implicating the Fourth Amendment resulting from a traffic stop "'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'") (quoting *Graham v. Connor*, 490 U.S. 386 (1989)); *see also United States v. Northington*, C/A No. 7:11-CR-41-FL, 2012 WL 333764

---

[3] Crowley also identified a defective taillight, ECF No. 150-8 at 00:15-22, but Defendants do not argue to this Court that the tail light as a basis for the stop.

[4] While Plaintiff admits he was in violation of another traffic offense based on his driving with a learner's permit, Plaintiff argues this violation would not have provided reasonable suspicion to initiate the stop because the seizure happened prior to Crowley discovering this violation. ECF No. 167 at 6 ("Sgt. Crowley contends on pg 3. of [her] statement of facts that Plaintiff was in violation of 56-1-40 alone due to not having a licensed driver in the vehicle due to Plaintiff only having a beginner's permit. This is true, but not one citation was given or warning pursuant with 56-7-10, 56-7-15, and 56-5-6560(A)").

(E.D.N.C. Jan. 31, 2012) ("Whether reasonable suspicion exists to justify the stop depends on the "totality of the circumstances, including information known to the officers and any reasonable inferences to be drawn at the time of the stop."). Moreover, even if Crowley was factually wrong about the window tint, Crowley was not required to be correct. All that was required was an objectively reasonable, articulable suspicion that Plaintiff was violating the law. *See Heien v. North Carolina*, 574 U.S. 54, 66, (2014) ("The Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable."); *United States v. Taylor*, C/A No. 3:20-CR-00110, 2021 WL 377686, at *4 (E.D. Va. Feb. 3, 2021) ("A search or seizure that is premised on a reasonable mistake of fact (or law) is not a violation of an individual's Fourth Amendment rights.") (citing *Heien*, 574 U.S. at 57).

Plaintiff argues that "South Carolina law permits window tinting with certain restrictions. For sedans, the front side windows must allow more than 27% of light in." ECF No. 65 at 7. He also argues that Crowley "relied solely on an unsubstantiated claim of a window tint violation without providing measurable evidence, such as a reading from a tint meter." ECF No. 95 at 1 (citing *United States v. Sowards*, 690 F.3d 583 (4th Cir. 2012) (finding an officer's visual estimate of a vehicle's speed, which served as the basis for a traffic stop, lacked the necessary indicia of reliability)). However, Plaintiff fails to forecast evidence of a genuine issue of material fact that Crowley's observation of the window tint lacked an indicia of reliability. Nor does the record demonstrate any reason to doubt Crowley's ability to estimate window tint with a reasonable degree of accuracy.

The case of *United States v. Ochoa*, 539 F.Supp.3d 504 (E.D.N.C. May 12, 2021), cited by Defendants, is instructive. ECF No. 150-1 at 7-10. Law enforcement stopped Ochoa's vehicle for a suspected window tint violation, but the windows were subsequently deemed compliant with the

law by a light meter. 539 F.Supp.3d at 506. Ochoa argued *Sowards* should apply to find the traffic stop was unconstitutional. *Id*. at 508. The court disagreed, primarily due to the different requirements under the Fourth Amendment to effectuate the stops at issue. *Id*. at 509-10. For the stop in *Sowards*, which was predicated on the already completed act of speeding, the officer needed probable cause. *Id*. Whereas, in *Ochoa*, the officer needed reasonable suspicion to further investigate the window tint violation. *Id*. at 509-10 ("On the other hand, because the windows of a vehicle will have the same tint prior to and after the effectuation of a traffic stop, a warrantless seizure to investigate a window-tint offense is fundamentally different and may be reasonable for Fourth Amendment purposes."). Here, Crowley needed reasonable suspicion to initiate the Traffic Stop to further investigate the window tint which she observed was unlawful. Because the undisputed facts demonstrate Crowley, under these circumstances, had reasonable suspicion to initiate the Traffic Stop, this case is distinguishable from *Sowards*. Therefore, the undersigned recommends that the district court grant Defendants' Motion for Summary Judgment on Plaintiff's claim for an unlawful seizure from the Traffic Stop.

### *Fourth Amendment Search Claim Arising from the Vehicle Search*

Plaintiff asserts that Crowley's search of his car was unconstitutional. ECF No. 20 at 7. Defendants argue Crowley's observation of marijuana pursuant to the plain view doctrine established probable cause for Crowley to search the vehicle. ECF No. 150-1 at 11-14. Plaintiff argues the plain view doctrine "does not apply, because nothing was seen or confiscated." ECF No. 167 at 8. Plaintiff also argues he did not give consent and Crowley unlawfully extended the stop to conduct the search. *Id*. at 9-10.

Generally, "an officer's focus must remain on the bases for the traffic stop, and that the stop must be sufficiently limited in scope and duration to satisfy the conditions of an investigative

seizure." *United States v. Palmer*, 820 F.3d 640, 649 (4th Cir. 2016) (cleaned up). "[A]n officer cannot investigate another matter outside the scope of the initial stop unless he receives the motorist's consent or develops reasonable, articulable suspicion of ongoing criminal activity." *Id.* at 649-50. However, the Fourth Amendment "permits an officer to conduct an investigation unrelated to the reasons for the traffic stop as long as it '[does] not lengthen the roadside detention.'" *United States v. Bowman*, 884 F.3d 200, 210 (4th Cir. 2018) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). And officers may extend a traffic stop "beyond what is necessary to effectuate its original purpose" if the officer "posses[es] reasonable suspicion" of criminal activity or obtains consent. *Id.*; *United States v. Miller*, 54 F.4th 219, 228 (4th Cir. 2022).

"As a general rule, warrantless searches or seizures are per se unreasonable. But there are a few specifically established and well-delineated exceptions." *United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010) (internal quotation marks omitted). As is relevant here, the "plain view" exception to the warrant requirement allows police officers to seize evidence in plain view without a warrant when: "(1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." *Id.* (alterations and internal quotation marks omitted). Based on the plain view doctrine, the Fourth Circuit has "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." *United States v. White*, 836 F.3d 437, 441 (4th Cir. 2016), *abrogated in part on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018)). Therefore, "when marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile." *Id.*

Crowley had probable cause to search the vehicle when she smelt marijuana emanating from the vehicle. *See e.g.*, *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) ("[B]ecause marijuana has a distinct smell, the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.") (quotation marks and citation omitted). Upon Plaintiff's arrest, Crowley attested that she smelled "the strong odor of marijuana emanating from the vehicle." ECF No. 150-8 ¶ 13. This is consistent with her contemporaneous observation to the other officer on scene, who also confirmed the smell. ECF No. 150-9 at 07:30-41. Crowley further attested that the vehicle search was based on the odor and the passenger's admission that marijuana was in the vehicle and that "they" had just smoked.[5] *Id*. at ¶ 16. The passenger was found to be in possession of marijuana. *Id*. at 15; *see* ECF No. 15-9 at 09:03-40, 14:18-30. Crowley attested that she "was particularly concerned with making sure there was no contraband in the vehicle because we were allowing the Plaintiff's brother to drive the car away from the scene and I did not want him to leave the scene with any other additional illegal items." *Id*. ¶ 17. Plaintiff has not forecasted any evidence to suggest Crowley's determination regarding the smell of marijuana was unreasonable, and even if he could, the passenger's admission combined with Plaintiff's outstanding warrant gave ample justification for Crowley to search the vehicle.

The undisputed record shows Crowley initiated a lawful traffic stop. "A seizure for a traffic violation justifies a police investigation of that violation." *See Rodriguez*, 575 U.S. at 354. Such an investigation includes inspecting the driver's license, verifying the registration of the vehicle, and determining whether the driver has any outstanding arrest warrants. *Id*. at 355. Within minutes

---

[5] Plaintiff contests the legality of Crowley's questioning of the passenger. ECF No. 53 at 4-5. However, he lacks standing to assert any challenge on behalf of the passenger. *See Barber v. Overton*, 496 F.3d 449, 458 (6th Cir. 2007) (affirming that an individual does not have standing to challenge being injured as a result of the government's violation of another person's rights, no matter how interrelated the harms suffered).

of the stop, as Crowley investigated, she learned Plaintiff had an outstanding warrant. The discovery of Plaintiff's outstanding warrant established probable cause to arrest Plaintiff. *See Allen v. City of Columbia*, C/A No. 3:23-1783-SAL-PJG, 2023 WL 6283360, at * (D.S.C. Aug. 15, 2023) ("The outstanding arrest warrant, standing alone, provided probable cause to arrest Allen.") (collecting cases). Upon arresting Plaintiff, Crowley smelled marijuana and had justification to extend the traffic stop beyond its original purpose to search the vehicle, even without Plaintiff's consent. Therefore, the undersigned recommends that the district court grant Defendants' Motion for Summary Judgment on Plaintiff's claims arising from the vehicle search.

### Due Process Claims

Plaintiff also alleges his Fourteenth Amendment due process rights were violated. ECF No. 20 at 9. However, "the Due Process Clause of the Fourteenth Amendment does not provide protection in this area." *Brooks*, 85 F.3d at 184. Rather, "the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." *Id*. Accordingly, to the extent Plaintiff is bringing a separate due process claim, his claim is without merit.

### Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 150-1 at 15-18. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Because Defendants did not violate Plaintiff's constitutional rights, the undersigned recommends that the district court find that Defendants are entitled to qualified immunity as to the claims asserted against them in their individual capacities.

**Plaintiff's Motions for Summary Judgment**

Plaintiff filed multiple Motions for Summary Judgment. ECF Nos. 53; 65; 71; 98. The grounds Plaintiff asserts he is entitled to summary judgment are duplicative of his arguments presented in his Response in Opposition to Defendants' Motion for Summary Judgment. The Court addressed these arguments in consideration of Defendant's Motion for Summary Judgment above. Even taken in the light most favorable, they fail to create any genuine issue of material fact requiring denial of Defendants' Motion for Summary Judgment. For the same reasons as expressed above, the undersigned recommends the district court deny Plaintiff's Motions for Summary Judgment. *See e.g.*, *Hinzo v. S.C. Dep't of Corr. SCDC*, C/A No. 1:23-3636-JFA-SVH, 2024 WL 4367589, at *6 (D.S.C. Aug. 13, 2024) (recommending denial of plaintiff's cross-motion for summary judgment on same grounds as recommendation to grant defendants' motion for summary judgment).

**Evidentiary Motions**

Plaintiff has filed a bevy of motions seeking to suppress evidence regarding aspects of the traffic stop, the MIPP warrant, and vehicle search. ECF Nos. 93; 95; 110; 119; 123; 148; 158. The undersigned has reviewed Plaintiff's arguments in these filings in consideration of

Defendant's Motion for Summary Judgment and concludes they do not change the above recommendations. In general, these Motions are also duplicative of Plaintiff's Response in Opposition. When appropriate, the undersigned considered arguments raised in these Motions in the above analysis. Accordingly, the undersigned recommends that the district court find these Motions as moot.

**Motion for Injunctive Relief**

On May 9, 2025, Plaintiff submitted a filing captioned, "Motion to Revoke Surety Bonds." ECF No. 146. This Motion sets forth Plaintiff's various allegations of constitutional harms and requests the Court

> 1. Notify the surety bond provider of the alleged violations and recommend revocation of the Defendants' surety bonds.
>
> 2. Order an independent investigation into the Defendants' actions.
>
> 3. Recommend the suspension of the Defendants pending the resolution of this matter.
>
> 4. Provide any other relief deemed just and proper.

*Id*. at 2. The undersigned construes this as a request for preliminary injunction.

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (citation and internal quotation marks omitted). The decision whether to grant a preliminary injunction is committed to the equitable discretion of the district court. *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

A plaintiff seeking a preliminary injunction must establish the following four elements: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of

preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim. *Id.* at 22. Additionally, the Court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. *Id.* at 24.

Plaintiff is not entitled to the injunctive relief. As discussed above, Plaintiff is not likely to succeed on the merits. Moreover, because the complained of alleged constitutional violations are not ongoing and are related to an isolated incident, Plaintiff is not suffering an irreparable harm in the absence of preliminary relief. Therefore, the undersigned recommends the district court deny Plaintiff's request for injunctive relief.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the undersigned recommends the district court **DENY** Plaintiff's Motions for Summary Judgment, ECF Nos. 53; 65; 71; 98, and **GRANT** Defendant's Motion for Summary Judgment, ECF No. 150. The undersigned further recommends the district court **DENY** Plaintiff's Motion for Preliminary Injunction, ECF No. 146, and find the remaining Motions **MOOT**. ECF Nos. 93; 95; 110; 119; 123; 148; 158.

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

June 16, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).